IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL CASE NO. |
| | ) | 1:21-CR-00346-BAH-1 |
| GLEN MITCHELL SIMON | ) | |

<u>SENTENCING MEMORANDUM</u>

COMES NOW the Defendant, GLEN MITCHELL SIMON, by and through undersigned counsel and hereby files this sentencing memorandum in support of a reasonable sentence. Mr. Simon asks that this Court impose a sentence of three years' probation, with the first six months served on home detention. Mr. Simon has already agreed to pay $500 restitution, and he is amenable to a period of community service.

**<u>Background</u>**

Mr. Simon is a 31-year-old father of three young children and a small business owner. He owns and operates a tree removal and pruning service, Omega Tree Service. He is originally from Maine, but has made his home in rural north Georgia.

Mr. Simon was charged by means of criminal complaint with offenses related his participation in the January 6, 2021 protests and entry to the United States Capitol. (Doc. 1). Upon learning of the outstanding federal warrant, he voluntarily submitted to arrest in the Northern District of Georgia on May 5, 2021. (Doc. 21).

1

Thereafter, Mr. Simon was named in a criminal information charging him with four misdemeanor counts. (Doc. 6).

Following his arrest, Mr. Simon was released on conditions of supervision. (Docs. 16, 21). For the 15 months since Mr. Simon's arrest, he has not had any issues while on supervision. He has complied with the Court's bond conditions, maintained his business, and supported and parented his children.

Mr. Simon did not file any pretrial motions and indicated to the government his interest in accepting responsibility for his conduct and resolving his case with a plea. The parties entered into a plea agreement, and at a plea hearing on October 15, 2021, Mr. Simon pleaded guilty to Count Four of the information, a charge of violating 40 U.S.C. § 5104(e)(2)(G) by parading, demonstrating, or picketing in a Capitol building. (Docs. 32, 33).

In January 2022, prior to sentencing, the government obtained additional evidence of Mr. Simon's conduct. Mr. Simon agreed to withdraw his plea and entered into a different plea agreement with the government, in which he admitted to a more serious misdemeanor charge in the information, a violation of 18 U.S.C. § 1752(a)(2): Disorderly and Disruptive Conduct in a Restricted Building or Grounds. The Court held a second plea hearing on April 29, 2022, at which he entered his plea. (Doc. 51).

The Presentence Report ("PSR") calculates Mr. Simon's total offense level as 11, based upon: (1) a base offense level of 10 under U.S.S.G. § 2A2.4(a)(2); (2) a 3-level enhancement under § 2A2.4(b)(1)(A); and (3) a 2-level adjustment for acceptance of responsibility under § 3E1.1(a). (PSR at ¶ 27). The parties stipulated to these guideline applications, and Mr. Simon does not dispute the offense level.

Mr. Simon is assigned one criminal history point for a single misdemeanor conviction stemming from conduct that occurred in 2011, nearly 10 years before the instant offense—resulting in his placement in criminal history category I. (*Id*. at ¶¶ 29-30). An offense level of 11 and criminal history category I yields a guideline sentencing range of 8 to 14 months, in Zone B of the sentencing table.

Under the facts and circumstances presented in Mr. Simon's case, a custodial sentence is not necessary to satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a). In light of Mr. Simon's personal history and characteristics and the nature of the offense, a sentence of three years' probation with the first six months served on home confinement is reasonable and appropriate, and would comport with § 3553(a)'s directive to impose a sentence that is "sufficient, but not greater than necessary."

**Argument And Citation To Authority**

I. **After Calculation Of The Applicable Guideline Range, The Court Must Consider The 18 U.S.C. § 3553(a) Factors To Arrive At A Reasonable Sentence**

The Sentencing Guidelines promulgated by the United States Sentencing Commission provide an advisory, rather than a mandatory regime for determining sentences. *United States v. Crawford*, 407 F.3d 1174, 1178 (11th Cir. 2005) (citing *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005)). The Sentencing Commission's guideline ranges are only generalizations. *United States v. Hunt*, 459 F.3d 1180, 1184-85 (11th Cir. 2006). The Court should consult the Guidelines, but the resulting range is merely one factor that a sentencing court must consider in arriving at a reasonable sentence. *Crawford*, 407 F.3d at 1178-79. In its consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court may determine that the guideline sentence:

> should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure.

*Rita v. United States*, 551 U.S. 338, 351, 127 S. Ct. 2456, 2465 (2007) (internal citations omitted). As the Supreme Court noted in *Rita*, guideline calculations expressly exclude consideration of certain offender characteristics. *Id*. at 351, 127

S. Ct. at 2465; *see also Hunt*, 459 F.3d at 1184 n.4. And, as the Supreme Court articulated in *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007), extraordinary circumstances are not required to justify an outside of the guideline sentence. *Gall*, 552 U.S. at 47, 128 S. Ct. at 595.

Congress has mandated that the preliminary guidelines calculation be considered along with the other sentencing factors enumerated in § 3553(a), a procedural requirement unaffected by *Booker* and its progeny. *See* 18 U.S.C. § 3553(a); *Hunt*, 459 F.3d at 1184. After calculation of the custody range, it is within the sentencing court's discretion to sentence within that guideline, or to impose a more severe or more lenient sentence than the applicable range, "provided the resulting sentence is reasonable in light of the § 3553(a) factors." *United States v. Shelton*, 400 F.3d 1325, 1334 (11th Cir. 2005); *see also Gall*, 552 U.S. at 47, 128 S. Ct. at 595.

Congress has set forth the factors a sentencing court must consider in determining a reasonable sentence, which include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

*United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005) (summarizing 18 U.S.C. § 3553(a)).

The ultimate command of § 3553(a), however, is to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the sentencing purposes stated in the statute. *Id*. This parsimony provision requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing—just punishment, deterrence, protection of the public, and rehabilitation of the defendant. Thus, although § 3553(a) requires the sentencing court to consider the applicable guideline range, it is only one of several factors, and it is the parsimony provision that serves as "the guidepost for sentencing decisions post-*Booker*." *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir. 2006).

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113, 116 S. Ct. 2035, 2053 (1996). Underlying this tradition is the principle that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247, 69 S. Ct. 1079, 1083 (1949).

In Mr. Simon's case, a custodial sentence, even within the suggested guideline range, is unreasonable. Accordingly, he asks the Court to impose a sentence of three

6

years' probation. In light of 18 U.S.C. § 3553(a)'s primary directive that sentencing courts impose a sentence "sufficient, but not greater than necessary" to satisfy the sentencing factors set forth in § 3553(a)(2), the requested sentence is appropriate based upon the nature and circumstances of the offense, and Mr. Simon's personal history and characteristics.

### A. The Circumstances of the Offense

Mr. Simon traveled to Washington, D.C. alone. He has admitted to his participation in the protest and entry to the Capitol and to the offense conduct—both in executing the written plea agreement and statement of facts, and in his admissions of conduct when questioned by the Court at the plea hearing. However, he did not participate in a group or organization, nor did he play any organizing or leadership role. To the extent that Mr. Simon spoke with or looked at other participants during the Capitol entry, that was merely because they were in the same location, participating in the same activity–not because he was in cahoots with anyone or directing anyone else's conduct.

Regarding the incident where Mr. Simon joined others in pushing a bicycle rack into a line of officers, the video of the incident shows the sequence of events as follows: Others were involved in that conduct, which Mr. Simon played no role in initiating. Mr. Simon approached, placed his hands on the bicycle rack for approximately 20 seconds, and then removed his hands and left the immediate area.

Regarding the incident in the Rotunda, Mr. Simon has admitted to resisting the officers' efforts to clear the Rotunda because he did not leave when instructed and attempted to maintain his position despite the officers' efforts. However, he did not make any physical contact with officers. The government describes that Mr. Simon appears to have his fists raised in a still shot taken from the surveillance video. However, in the video, it is apparent that the Rotunda had become a scrum or "mosh pit," with people (participants and officers) pushing each other from every direction. Mr. Simon was being buffeted by bodies surging into him from both sides. At one point, Mr. Simon puts his hands up to use his forearms as a bumper to prevent himself from being pushed into other people—he is raising his hands defensively, not offensively. At another point, Mr. Simon appears to grab the shirt of the participant in front of him and pull that man back, away from the officers. Mr. Simon does not dispute that as officers attempted to herd participants out of the room, he actively resisted these efforts by trying to remain in place—but he did not strike or push, or attempt to strike or push, any officer. He found himself in a scrum, tried to prevent himself from incurring injury, and within several minutes, left the Rotunda.

To the extent that the government contends Mr. Simon's vest was an indication that he was prepared for violence, it is noteworthy that he did not carry any weapon. (*See* Doc. 59 at 8). There is no evidence that he sought out any specific member of Congress or intended to do so. Nor did he encourage specific acts of

violence.  Caught up in the events that day, he repeated the angry rhetoric that was used by many participants, and used by organizers and speakers at the protest events that precipitated the breaching of the Capitol.  However, his actions went no further than the conduct he has admitted to.  Mr. Simon has admitted to his boastful, insulting, and inflammatory statements.

B.     **Mr. Simon's Personal History and Characteristics**

Mr. Simon's personal history and characteristics support that a non-custodial sentence of three years' probation with a term of home confinement is reasonable and "sufficient, but not greater than necessary" to satisfy the § 3553(a) factors.  Mr. Simon is a small business owner, and he financially supports his three children.  His tree removal and pruning service employs others in his rural community.  Incarceration—particularly for the lengthy term suggested by the government—would result in Mr. Simon's business being shut down.  This would destabilize his family and negatively impact the employees who depend on him to support their own families.  Although this does not excuse Mr. Simon's conduct, it does constitute a mitigating factor that weighs in favor of a non-custodial sentence.

Further, Mr. Simon has been compliant with the Court's bond conditions and cooperated with pretrial supervision without incident for more than 15 months.  This lengthy period of compliance and lawful conduct demonstrates that a custodial

sentence is not necessary to promote respect for the law or specific deterrence. There is no need to incarcerate Mr. Simon to protect the public.

Finally, Mr. Simon is properly assigned to criminal history category I in recognition of his minimal criminal history. He has only one prior conviction, for a misdemeanor offense that occurred more than 10 years ago. (PSR at ¶ 29).

### C.    The Requested Sentence is Reasonable

The § 3553(a) factors support that a non-custodial sentence is appropriate in this case. As noted above, Mr. Simon has demonstrated that he is capable of living within the bounds of the law by his conduct while on pretrial supervision. He is remorseful for his conduct and appreciates the gravity of the offense, such that a custodial sentence is not necessary to deter him from future crime. Additionally, he has committed to paying restitution and is amenable to a term of community service.

Notably, the suggested guideline range of 8 to 14 months is in Zone B of the guideline table. The guidelines contemplate a non-custodial sentence: § 5C1.1(c) provides that a Zone B guideline range may be satisfied by a sentence of probation that substitutes a term of home detention in place of imprisonment. U.S.S.G. § 5C1.1(c)(3); *see also* U.S.S.G. § 5F1.2 (identifying home detention as a substitute for imprisonment). The Court is not obligated to impose any custodial term, or a term of home detention, and may impose a probation-only sentence.

## **Conclusion**

WHEREFORE, for all of the reasons set forth herein, Mr. Simon requests a reasonable sentence of three years of probation, with the first six months served on home confinement.

Respectfully Submitted, this 5th day of August 2022.

>  */s/ Rebecca Shepard*
>  Rebecca Shepard
>  Georgia Bar No. 780692
>  Attorney for Mr. Simon

Federal Defender Program, Inc.
Centennial Tower, Suite 1500
101 Marietta Street, N.W.
Atlanta, Georgia 30303
(404) 688-7530; Fax: (404) 688-0768
Rebecca_Shepard@fd.org

CERTIFICATE OF SERVICE

I hereby certify that the foregoing Sentencing Memorandum has been formatted in Times New Roman 14 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record:

>Barry Kent Disney
>Assistant United States Attorney
>U.S. Attorney's Office for the District of Columbia
>601 D Street, N.W.
>Washington, D.C. 20530
>Barry.Disney@usdoj.gov

Dated: This 5th day of August, 2022.

>/s/ Rebecca Shepard
>Rebecca Shepard
>Attorney for Mr. Simon

Federal Defender Program, Inc.
Centennial Tower, Suite 1500
Atlanta, Georgia 30303
(404) 688-7530; Fax (404) 688-0768
Rebecca_Shepard@fd.org